Joshua H. Haffner, SBN 188652
jhh@haffnerlawyers.com
Trevor Weinberg, SBN 330778
tw@haffnerlawyers.com
Samantha Salas, SBN 367563
sc@haffnerlawyers.com
**HAFFNER LAW PC**
15260 Ventura Blvd., Suite 1520
Sherman Oaks, California 91403
Telephone: (213) 514-5681
Facsimile: (213) 514-5682

Attorneys for Plaintiff MANDY SAECHAO,
on behalf of herself and all others similarly situated

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MANDY SAECHAO, an individual, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNITED PARCEL SERVICE, INC.; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 3:25-cv-02431-RFL<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION**<br><br>[Filed concurrently with: Declaration of Mandy Saechao; Declaration of Joshua H. Haffner; Declaration of Justin Regus; Administrative Motion to File Under Seal (Civ. L.R. 79-5); [Proposed] Order]<br><br>Hearing Date: November 3, 2026<br>Hearing Time: 10:00 a.m.<br>Courtroom: 15<br><br>(Assigned to the Hon. Rita F. Lin) |

TO THE COURT, ALL PARTIES, AND ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on November 3, 2026, at 10:00 a.m., or as soon thereafter as counsel may be heard, before the Honorable Rita F. Lin, of the United States District Court, Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, Courtroom 15, Plaintiff Mandy Saechao ("Plaintiff"), will and hereby does move for an order certifying this case as a class action under Federal Rules of Civil Procedure, Rule 23, for the following class:

> **Class**: All California employees of Defendant who worked at any warehouse, package-handling, or distribution facility with a security screening process in one or more of the following job classifications: Loader/Unloader – Hub (H345); Preloader (O340); Loader/Unloader AM (O365); Loader/Unloader PM (O360); Art 22 Combo Ins/Ins (O473); Revenue Recovery Clerk (F452); PE Porter (M375); Hub Sorter (H325); Pickoff (H340); Sorter AM (O345); Primary Sorter (H330); Sorter PM (O350); Hub Porter (H375); HVD/LVD Sorter (H337); Package Center Specialist (O500); and Art 22.3 Porter/Helper (M310), from January 24, 2021, through the date of class certification.

Plaintiff requests that this Court grant class certification of this action under Federal Rules of Civil Procedure, Rule 23(a) and 23(b)(3) or, in the alternative, certify particular claims or issues under Rule 23(c)(4), appoint Plaintiff's counsel, Joshua H. Haffner, Trevor Weinberg, and Samantha Salas of Haffner Law PC, to serve as counsel to the class, and authorize notice to the class of the pending action and its members' right to opt-out under Federal Rules of Civil Procedure, Rule 23(c)(2)(B).

DATED: July 20, 2026

HAFFNER LAW PC

By: */s/ Trevor Weinberg*

Joshua H. Haffner
Trevor Weinberg
Samantha Salas
Attorneys for Plaintiff and all others similarly situated

# TABLE OF CONTENT

I. Introduction. ........ 8

II. Factual Background. ........ 9

A. UPS's Warehouse Security Screening Process. ........ 9

B. Defendant's Policy Of Paying *Only* Badge-Badge Screening Time. ........ 10

C. Class Members' Unpaid Walking Time While Confined Inside Defendant's Premises. ........ 11

1. UPS' Policies Regarding Unpaid Off-The-Clock, Walk Time To And From Security Screenings. ........ 11

2. UPS' Policy Of Not Paying From Actual Clock-In Time, And Instead Starting Pay At The Scheduled Start Time. ........ 12

E. UPS' Meal And Rest Break Policies Related To Security Screenings. ........ 13

F. Plaintiff's Experience At UPS. ........ 14

III. Legal Argument. ........ 15

A. Plaintiff Satisfies The Requirements Of FRCP Rule 23(a). ........ 15

1. The Proposed Class Is Sufficiently Numerous And Ascertainable. ........ 15

2. There Are Questions Of Law And Fact Common To The Class. ........ 16

3. Plaintiff's Claims Are Typical Of The Proposed Classes. ........ 17

4. Plaintiff And Her Counsel Will Fairly And Adequately Represent The Interests Of The Classes. ........ 17

B. Plaintiff Satisfies The Requirements Of Rule 23(b). ........ 18

1. Common Issues Predominate Across UPS' California Facilities. ........ 18

2. Common Issues Predominate As To Each Cause Of Action. ........ 19

a. Common Issues Predominate As To Plaintiff's Meal Break Claims. ........ 19

i. It is impossible for class members to take meal breaks off premises without interruption. ........ 19

ii. Meal break not provided for shifts exceeding 5 hours. ........ 21

b. Common Issues Predominate As To Plaintiff's Rest Break Claim. .......................... 22

c. Common Issues Predominate As To Plaintiff's Minimum Wage Claim. .................. 23

i. Unpaid Off-The-Clock Time Between Security Screening And Clock In/Out Location. .......................................................................................................... 24

ii. Unpaid On-The-Clock Time Between Clock In Location And Scheduled Work Area. 26

iii. Common Issues Predominate As To Plaintiff's Overtime Wage Claim. .................. 27

iv. Common Issues Predominate As To Plaintiff's Derivative Claims For Inaccurate Wage Statements And Failure To Pay Wages At Separation. .......................................... 27

v. Common Issues Predominate As To Plaintiff's UCL Claims. ................................ 28

2. Class Treatment Is Manageable And Superior. ............................................................ 29

IV. Conclusion. ............................................................................................................ 31

# TABLE OF AUTHORITOIES

**Cases**

*Abdullah v. U.S. Security Associates, Inc.*, 731 F.3d 952 (9th Cir. 2013) ........................................ 8
*Alberts v. Aurora Behavioral Health Care* 241 Cal.App.4th 388 (2015) ................................ 7, 18
*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ........................................................... 14
*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) ............................................ 29
*Andrade v. Arby's Restaurant Group, Inc.*, 225 F.Supp.3d 1115 (N.D.Cal. 2016) ...................... 27
*Augustus v. ABM Security Services, Inc.* 2 Cal.5th 257 (2016) ........................................ 21
*Bono Enterprises v. Bradshaw* 32 Cal.App.4th 968 (1995) ................................................ 19
*Brinker Restaurant Corp. v. Superior Court* 53 Cal.4th 1004 (2012) ........................................ 8
*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121 (9th Cir. 2017) ........................................ 15
*Camp v. Home Depot U.S.A., Inc.* 84 Cal.App.5th 638 (2022) ........................................ 25
*Campbell v. Vitran Express Inc*, 2015 WL 7176110 (C.D. Cal. 2015) ........................................ 22
*Cervantez v. Celestica Corp.*, 253 F.R.D. 562 (C.D. Cal. 2008) ........................................ 17
*Community Assisting Recovery, Inc. v. Aegis Security Ins. Co.* (2001) 92 Cal.App.4th 886 (2001) ........................................................................................................ 27
*Daar v. Yellow Cab Co*. 67 Cal.2d 695 (1967) ........................................................... 30
*Donohue v. AMN Services, LLC* 11 Cal.5th 58 (2021) ........................................................ 20
*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) ........................................................ 22
*Frlekin v. Apple Inc.* 8 Cal.5th 1038 (2020) ........................................................... 19
*Frlekin v. Apple Inc.*, 309 F.R.D. 518 (N.D. Cal. 2015) ........................................................ 17
*Frlekin v. Apple Inc.*, 8 Cal. 5th 1038 (2020) ........................................................... 23
*Godfrey v. Oakland Port Servs. Corp.*, 230 Cal. App. 4th 1267 (2014) ........................................ 21
*Hamilton v. Wal-Mart Stores, Inc.*, No. 19-56161, 2022 WL 2374445 (9th Cir. 2022) ................ 20
*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (1994) ................................................ 16, 17
*Hoffman v. Blattner Energy, Inc.*, 315 F.R.D. 324 (C.D. Cal. 2016) ........................................ 26
*Huerta v. CSI Electrical Contractors*, 15 Cal. 5th 908 (2024) ........................................ 23

*In re United Energy Corp. Solar Modules Tax Shelter Investments Securities Litigation,* 122 F.R.D. 251 (N.D. Cal. 1988)……………………………...…………………………18
*Int'l Molders & Allied Workers' Local 164 v. Nelson*, 102 F.R.D. 457 (N.D. Cal. 1983) ........... 14
*Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152 (9th Cir. 2001) ........ 17
*Lao v. H&M Hennes & Mauritz, L.P.*, 2018 WL 3753708 (N.D. Cal. 2018)........ 24
*Leyva v. Medline Indus., Inc.*, 716 F.3d 510 (9th Cir. 2013) ........ 29
*McGhee v. Tesoro Ref. & Mktg. Co. LLC*, 2023 WL 1997729 (N.D. Cal. 2023)........ 20
*Miles v. Kirkland's Stores, Inc.*, 89 F.4th 1217 (9th Cir. 2024) ........ 18
*Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590 (C.D. Cal. 2015)........ 15
*Morillion v. Royal Packing Co.* 22 Cal.4th 575 (2000) ........ 23
*Ornelas v. Tapestry, Inc.*, 2021 WL 3471173 (N.D. Cal. 2021)........ 26
*Safeway, Inc. v. Superior Court*, 238 Cal.App.4th 1138 (2015)........ 27
*Sali v. Corona Regional Med. Ctr.*, 909 F.3d 996 (9th Cir. 2018) ........ 25
*Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391 (N.D. Cal. 2005) ........ 16
*Stewart v. Quest Diagnostics Clinical Lab'ys, Inc.*, 2022 WL 5236821, (S.D. Cal. 2022) ........ 22
*Troester v. Starbucks Corp.* 5 Cal.5th 829 (2018) ........ 25
*Tyson Foods, Inc. v. Bouaphakeo* 577 U.S. 442 (2016) ........ 28
*Vasquez v. Superior Court*, 4 Cal.3d 800 (1971) ........ 14
*Villalpando v. Exel Direct Inc.*, 2016 WL 1598663 (N.D.Cal. 2016) ........ 22
*Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541 (2011)……………………………………17
*Walter v. Leprino Foods Co.*, 670 F.Supp.3d 1035 (E.D. Cal. 2023)........ 26
*Wilson v. TE Connectivity Networks, Inc.*, 2017 WL 1758048 (N.D.Cal. 2017)........ 27

**Statutes**

Business & Professions Code §17200 ........ 28
Fed. R. Civ. P. 23(g)(1)(A) ........ 18
Lab. Code §§ 512(a)........ 21

Lab. Code, § 226.7(c) ..... 29

Labor Code §203 ..... 28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. Introduction.

Plaintiff Mandy Saechao ("Plaintiff") seeks class certification of wage claims by employees who work at Defendant United Parcel Service, Inc.'s ("UPS" or "Defendant") California warehouse facilities. Defendant subjects its warehouse employees to a mandatory, common security check process, to enter or exit the premises. Plaintiff's motion for class certification is predicated on this common security check policy that confines and controls class members, as well as Defendant's common records.

This confinement and control caused by Defendant's security process gives rise to several wage violations. With respect to meal breaks, Defendant's security screening process preventing Class members from leaving UPS' premises unless they interrupt their break by going through the security check process, twice, to get in and out. California law requires that employees be relieved of all duty, and free to leave the premises, for "an uninterrupted 30 minutes." *Alberts v. Aurora Behavioral Health Care* 241 Cal.App.4th 388, 400 (2015). Defendant's policies make it impossible for Class members to leave the premises during Class members' 30-minute meal break without interrupting it by going through security. In addition, Defendant's own time records show meal periods that were missed outright. These meal period violations are established by Defendant's records themselves.

Likewise, for rest breaks, under California law, employees may not have policies that impede a duty-free break, including leaving the premises. Defendant's screening policy requires Class members to undergo ***two*** security screenings to leave for a rest break. Common issues predominate as to whether this security process impedes Class members' duty free rest breaks.

Finally, Defendant does not pay for all time Class members' work time, denying compensation for both off-the-clock and on-the-clock time. As to off-the-clock time, Defendant does not pay for Class members' time walking to and from the security check at the start and end of shifts. As to on-the-clock time, Defendant's policy is to only pay from scheduled start time, not clock in time. Thus, Defendant does not pay for the time Class members are required to walk

from the clock in location, after punching in, to their work station. This rounding down of class member's recorded time creates common minimum wage and overtime violations.

Wage and hour cases based on common employment policies uniformly applied, like this case, are ideal for class certification. "Claims alleging that a uniform policy consistently applied to a group of employees is in violation of the wage and hour laws are of the sort routinely, and properly, found suitable for class treatment." *Brinker Restaurant Corp. v. Superior Court* 53 Cal.4th 1004, 1033 (2012). The Ninth Circuit applies the same principle under Rule 23. *Abdullah v. U.S. Security Associates, Inc.*, 731 F.3d 952, 961–64 (9th Cir. 2013).

For the reasons set forth herein, Plaintiff respectfully requests that the Court grant this motion for class certification.

## II. Factual Background.

This is a California wage-and-hour class action for workers at UPS's warehouse facilities.

### A. UPS's Warehouse Security Screening Process.

UPS is a package-delivery company and operates warehouse and package-handling facilities throughout California, where hourly employees load, unload, and sort packages for delivery. Haffner Decl., Exh. 3 (Cota Depo.), 36:5–9; 43:16–23.)

Since August 1, 2021, UPS has maintained a common employee security screening process at approximately 39 of those California facilities. *Id.* at Exh. 4 (Savage Depo.), 18:23–19:1; Exh. 5 [UPS001400]. UPS' written security screening policy applies to all proposed class members. In UPS' "Clean In/Clean Out Procedures," addressed "To: All Employees," Defendant requires employees to remove all personal items from their pockets before walking through the metal detector, provide that "[a]ll bags, briefcases, etc., will be thoroughly searched," require that "[a]ll persons" "satisfy either the Metal Detector or the handheld wand prior to exiting the facility," and warn that failure to comply "could result in further discipline up to termination from UPS." *Id.* at Exh. 6 [UPS001388]; Exh. 3 (Cota Depo.), 55:24–56:22. Contracted guards conduct the screening at all 39 facilities pursuant to UPS "post orders." *Id.* at Exh. 4 (Savage Depo.) 20:7–11; 20:12–22.

UPS's security 30(b)(6) conceded there is no way in or out of UPS facilities except through the screening process:

> Q. An employee cannot bypass a security check and just walk directly into the facility, correct?
> A. That's correct. They would still need to go through the security.
> Q. And is it that also true that an employee cannot exit the facility without also passing through security?
> A. Yes, again, when they're leaving work for the end of the day or leaving the entrance, they go through screening, whatever that is, why they're leaving the entrance. When they leave through the entrance, they go through screening."

Haffner Decl., Exh. 4 (Savage Depo.), 27:22–28:10 [objection omitted]; *see also id.* at 27:13–21 ["every employee's going to go through the screening process still," and cannot opt out even by carrying nothing].

The security check program is uniform across the 39 California facilities. *Id*. at Exh.4 (Savage Depo., 28:13-18, 30:1-3.) UPS's corporate list of secured California facilities reflects a single, statewide rollout: nearly every facility carries the same "Facility Start Date" of August 1, 2021. Haffner Decl., Exh. 5 [UPS001400]. Testifying specifically about "the security screening sites that are listed," UPS's security 30(b)(6) confirmed that no employee at any of those sites can enter or exit without passing through security screening. Haffner Decl., Exh. 4 (Savage Depo.), 27:9–28:10. UPS's verified interrogatory responses confirm the list, identifying each of the California Secured Facilities by name and address. *Id*. at Exh. 7 [Def.'s Suppl. Resp. to Interrog. No. 3].

### B. Defendant's Policy Of Paying *Only* Badge-Badge Screening Time.

Each of UPS's 39 facilities runs the same Honeywell "ProWatch" badge-reader infrastructure, to track and pay time going through the security system. Haffner Decl., Exh. 4 (Savage Depo.), 38:25–39:3. To enter a secured facility, an employee must pass through the security checkpoint, badging in at an external reader, submitting to the security screening, and badging again at an interior reader before reaching the premises clocking in, and proceeding to the scheduled work location. *Id*. at Exh. 3 (PMK Cota Depo.) 37:5–18; 64:20–65:7. To leave the building, the employee passes back through the security check. *Id*. at Exh. 3 (PMK Cota Depo.),

63:22–64:1 [separate entry and exit turnstiles]; Exh. 8 (Terpening Depo.), 22:13–23; Exh. 6 [UPS001388]. The security checkpoint sits between the employee parking lot and the warehouse, so an employee cannot reach the parking lot, or otherwise leave the premises, without passing through security in both directions. *Id*. at Exh. 16 (Saechao Depo.) 23:22–24:2; Exh. 3 (PMK Cota Depo.), 70:23–71:13 [the guard shack is the only pedestrian entrance and exit]. All 39 UPS facilities follow the same entry and exit badge-scan, screening, badge-scan sequence. *Id*. at Exh. 4 (Savage Depo.) 33:1–34:2. That badge activity "for all 39 systems" feeds the same SCAR system (security check point activity record), which calculates security-time pay for every employee by the same methodology. *Id*. at Exh. 4 (Savage Depo.) 30:1–3; Exh. 9 (Cheung Depo.), 40:8–19; 66:20–67:22.

The posted notice announcing paid screening time is itself statewide, stating "[t]his change is for all union and union free hourly employees in California." Haffner Decl., Exh. 10 [UPS001398–99]; Exh. 8 (Terpening Depo.) 24:14–18.

### C. Class Members' Unpaid Walking Time While Confined Inside Defendant's Premises.

#### 1. UPS' Policies Regarding Unpaid Off-The-Clock, Walk Time To And From Security Screenings.

Defendant's common policy is not to pay class members for time travelling between the clock in/out locations and security screening, at the beginning and end of shifts.

UPS's time clocks are located inside the secured facility, so an employee cannot clock in until after clearing security, and cannot leave after clocking out until clearing the security area. Haffner Decl., Exh. 8 (Terpening Depo.) 27:6–17; Exh. 3 (Cota Depo.), 39:1–16; Exh. 16 (Saechao Depo.), 136:21–137:7. UPS's Labor Relations 30(b)(6) designee admitted that this travel time is unpaid:

> "Q. Ms. Terpening, within California, . . . for the workers within the California facilities are non-exempt workers paid for the time spent after security screening, but before they clock in?
> "THE WITNESS: No, they are not.

Haffner Decl., Exh. 8 (Terpening Depo.) 41:12–19; *see also* Exh. 9, (Cheung Depo.) 97:20–98:24.

UPS's own records confirm they do not pay for this walking time. UPS's timekeeping records for Plaintiff contain a dedicated "GTS TC Walk Time" field — and it is zero on every one of the 29 workdays on which she recorded paid time. Haffner Decl., Exh. 1, pgs. 6, 14, column 1. UPS's badge-scan records credited Plaintiff roughly 30 seconds per checkpoint pass. *Id*. at Exh. 11 [UPS001247], pg. 2; Exh. 12; UPS001251].

UPS's timekeeping system maintains, for each non-exempt employee, the daily scheduled start time, actual clock-in time, actual start and end times, and total paid time. Haffner Decl., Exh. 9 (Cheung Depo.) 33:3–36:4; 56:1–9; Haffner Decl. Exh. 1.

**2. UPS' Policy Of Not Paying From Actual Clock-In Time, And Instead Starting Pay At The Scheduled Start Time.**

The sequence at the start of every shift is that the employee clears UPS's mandatory security screening, walks to the time clock computers, clocks in, and then walks to his or her assigned work area, where UPS expects the employee to be at the scheduled start time. Haffner Decl., Exh. 16 (Saechao Depo.) 136:21–137:16; Exh. 3 (Cota Depo.) 38:22–25; Exh. 8 (Terpening Depo.) 26:8–27:4. None of this time is paid: the walk from security to the time clock is unpaid, off-the-clock time (Section C.1, *supra*) and the walk from the clock in location to the work area is unpaid as well, although it is on-the-clock-time, because pay does not begin until the scheduled time. Haffner Decl., Exh. 9 (PMK Cheung Depo.) 35:13–25.

UPS's Global Time System ("GTS") timekeeping system records, for every non-exempt employee and workday, both the scheduled start time ("Employee Start Work Scheduled Time") and the actual clock-in time ("Employee Report To Work Actual Time"). Haffner Decl., Exh. 9 (PMK Cheung Depo.) 33:3–34:14. When an employee clocks in before the scheduled start, the "Start Work Actual Time" UPS uses to calculate pay is set to the scheduled time, not the actual clock-in time. *Id.* at 34:1–14, 35:13–25. UPS's Labor Relations designee testified that employees who punch in before their start time are paid from the start time because "otherwise

someone could punch in an hour early and . . . we'd be paying everybody overtime." *Id*. at Exh. 8 (Terpening Depo.) 28:12–25.

This unpaid time is not idle time. UPS expects employees to be at their workstations — not the time clock — at the scheduled start time. *Id*. at Exh. 3 (Cota Depo.) 38:22–25 ["Q. Is a preloader expected to be at their work station or work area at the scheduled start time? A. Yes."]; Exh. 8 (Terpening Depo.) 26:8–27:4 [employees "are supposed to be at their workstation at start-up because the belts have started running"]. UPS's records show the policy applied to Plaintiff: on four of the 29 workdays on which she recorded paid time, she clocked in one to three minutes before her scheduled start, and each time her pay began at the scheduled time. *Id*. at Exh. 1, pg. 3 [11/8/2024, 12/6/2024, 12/21/2024, 12/23/2024].

**E. UPS' Meal And Rest Break Policies Related To Security Screenings.**

UPS provides Class members with a 30-minute meal period. Haffner Decl., Exh. 3 (Cota Depo.), 69:18–19 ["Q. And how long is that meal period for? A. 30 minutes."]; Exh. 8 (Terpening Depo.), 36:7–20; Exh. 13 [UPS000432, UPS001157] (lunch "shall not be less than one-half (1/2) hour"). At the Visalia facility the meal period is a collective, building-wide event: "in unison the building will shut off, belts will stop," and the operation restarts "on the 30th minute." *Id*. at Exh. 3 (Cota Depo.), 69:6–17, 69:23–70:5.

Because the security check stands between the work area and the parking lot, an employee who wishes to leave the premises during a 30-minute meal break must pass through the security check to exit and again to return, interrupting and shortening the break. Haffner Decl., Exh. 3 (Cota Depo.), 54:5–15; Exh. 16 (Saechao Depo.), 127:15–128:5. UPS's security process 30(b)(6) witness testified that an employee who leaves for a meal period "would be screened when they left for that meal period[,] [a]nd upon entering they'd be screened when they came back from that meal period." *Id*. at Exh. 4 (Savage Depo.), 35:18–36:11.

Rest periods follow the "same process as the meal periods." *Id*. at Exh. 3 (Cota Depo.), 55:15–17. Rest breaks at UPS's facilities are 15 minutes under the operative collective bargaining agreements. *Id*. at Exh. 13 [UPS000515 (2018–2023); UPS001017 (2023–2028)].

These meal and rest break policies are uniform across all 39 California facilities. UPS's 30(b)(6) designee testified that "[t]here are no differences in the HR policies between the different facilities in California for meal and rest periods," and the same is true of its timekeeping policies. *Id.* at Exh. 14 (PMK Felsing Depo.) 18:5–21; 33:21–25.

**F. Plaintiff's Experience At UPS.**

Plaintiff worked for UPS as a non-exempt, part-time preloader at its Visalia, California facility (which UPS calls "Sequoia" or "CAVSI"), loading packages into trucks and delivery vans. Haffner Decl., Exh. 16 (Saechao Depo.), 20:10–12, 43:16–23; Exh. 15 [UPS001236–44]. Plaintiff drove to work at the UPS facility, parked in the employee lot and, like every employee, entered through the guard house that sits between the parking lot and the facility. *Id.* at Exh. 16 (Saechao Depo.), 85:17–86:7. Each morning, Plaintiff badged in at the turnstile, submitted her purse or backpack for inspection, passed through a metal detector, badged a second reader, and walked across an outdoor walkway to the warehouse. *Id.* at Exh. 16 (Saechao Depo.), 92:15–23, 121:8–17. Guards checked bags "going in and going out as well." *Id.* at Exh. 16 (Saechao Depo.), 103:7–9. On a normal day the checkpoint itself took "a minute or a little over a minute," but lines formed at the door when the preload shift arrived together, on foggy winter mornings, and again at shift's end "if everybody is trying to leave at the same time." *Id.* at Exh. 16 (Saechao Depo.), 122:18–24, 104:5–15.

The time clocks, three computers, sit at the front of the warehouse, inside the secured perimeter. *Id.* at Exh. 16 (Saechao Depo.), 136:21–137:7. Plaintiff testified that the walk between the checkpoint and the clock was substantial, "like, three to four minutes. That's my estimate." *Id.* at Exh. 16 (Saechao Depo.), 137:17–25; *see id.* 138:1–4 [the three to four minutes does not include any stop at the restroom or vending machine]. Plaintiff made the same walk in reverse after clocking out, then passed back through the exit turnstile, metal detector, and badge reader to reach her car. *Id.* at Exh. 16 (Saechao Depo.), 95:13–96:4.

Plaintiff estimates the walk from the clock in machine at the beginning of her shift, to the work area for her scheduled start, took four minutes. Declaration of Mandy Saechao ("Saechao

Decl.") ¶6.

Plaintiff's records reflect four shifts where Plaintiff was recorded as receiving a lunch break. Haffner Decl., Exh. 12 [UPS 001251]. During her 30-minute meal period, Plaintiff went to her car "to get away from . . . the warehouse," which required passing through the security check both ways, and after the round trip, only "a nice little 15 to 20 minutes" of her 30-minute break remained for her own use. Haffner Decl., Exh. 16 (Saechao Depo.), 127:15–128:5, 129:5–18. Other employees also went to their cars, through security, on their lunch breaks. *Id.* at Exh. 16 (Saechao Depo.), 128:15–17. With respect to rest breaks, Plaintiff testified that Defendant's warehouse is "a big facility," and "[b]y the time I walked to my car and walk back, my whole break is gone." *Id.* at Exh. 16 (Saechao Depo.) 130:3–9.

There are 8 shifts recorded by UPS where Plaintiff worked over 5 hours but did not receive a meal break. Haffner Decl., Exh. 12 [UPS 001251]. And one of those shifts, Plaintiff worked over 6 hours without a meal period. *Id.*

Plaintiff ceased working for UPS on December 31, 2024.

## III. Legal Argument.

Plaintiff's motion for class certification is governed by Federal Rule of Civil Procedure 23. Plaintiff must establish numerosity, commonality, typicality, and adequacy under Rule 23(a), and predominance and superiority under Rule 23(b)(3); the Court conducts a "rigorous analysis" of each requirement. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011). The certification inquiry does not reach the merits: the question is "not whether the plaintiff… has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).

### A. Plaintiff Satisfies The Requirements Of FRCP Rule 23(a).

#### 1. The Proposed Class Is Sufficiently Numerous And Ascertainable.

The proposed class is sufficiently numerous. As a general rule, a putative class of forty or more will be found sufficiently numerous. *See e.g.*, *Int'l Molders & Allied Workers' Local 164 v. Nelson*, 102 F.R.D. 457, 461 (N.D. Cal. 1983). Here, Defendant maintains a security screening

process at approximately 39 California facilities. UPS's verified discovery responses state 62,529 individuals were part of the agreed class job classifications at its California Secured Facilities between March 29, 2022 and February 11, 2026. Haffner Decl., Exh. 7 [Def.'s Suppl. Resps. Pl.'s Interrogs., Set One, No. 1]. UPS's facility-by-facility discovery responses further confirm numerosity: 1,664 class members at the Visalia facility alone, 7,560 at Ontario (CAONA), 5,140 at Riverside (CARVE), and 4,477 at Lathrop (CALAH). *Id.* at No. 4.

The Ninth Circuit has not adopted an "ascertainability" requirement. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1125 n.4 (9th Cir. 2017). Where a class can be defined by reference to "objective criteria," that is sufficient. *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 609 (C.D. Cal. 2015). Here, the Class is defined by objective criteria. Moreover, Defendant has ascertained the Class, and its own timekeeping records identify each Class member's recorded time, meal periods and shift lengths. Haffner Decl., Exh. 9 (Cheung Depo.) 33:3–36:4; Exhs. 1-2.

**2. There Are Questions Of Law And Fact Common To The Class.**

Certification is appropriate under the commonality prong when "there are questions of law or fact common to the class." FRCP 23(a)(2). "[I]t is not necessary that all questions of law and fact be common." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1019 (9th Cir. 1998). Commonality may be satisfied by a single common question of law or fact. *Id.* In *Wal-Mart Stores v. Dukes,* the Supreme Court stated class "claims must depend upon a common contention … of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. Here, the theory of recovery and common questions of law and fact are based primarily on the unlawfulness of UPS' security check policy. The Ninth Circuit found commonality on a similar basis. *Abdullah*, 731 F.3d at 962–63.

///

///

**3. Plaintiff's Claims Are Typical Of The Proposed Classes.**

For typicality to exist, class representative plaintiffs must have claims "reasonably co-extensive with those of absent class members," but need not be "substantially identical." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998). "In determining whether typicality is met, the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff." *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005). Here, Plaintiff's claims arise out of the same meal and rest break, and security check policies and procedures, and involve the same conduct by UPS and same legal theories. Plaintiff is a member of the Class, as she worked at a screened facility throughout her employment, and her time records reflect unpaid 30-minute meal periods. Haffner Decl., Exh. 2; Haffner Decl., Exh. 16 (Saechao Depo.) 20:8–12. Her records also reflect eight workdays exceeding five hours with no recorded meal period, making her claims co-extensive with both of the Class's meal-break theories. Plaintiff's time records also reflect no hours paid for walking, and on-the-clock time (walking from clock in to work station) for which she was not paid. Haffner Decl., Exh. 1. The same type of time records exist for all class members. The typicality requirement is met.

**4. Plaintiff And Her Counsel Will Fairly And Adequately Represent The Interests Of The Classes.**

The adequacy of representation requirement has two elements: "(1) that the representative's party's attorney be qualified, experienced and generally able to conduct the litigation; and (2) that the suit is not collusive and plaintiff's interests are not antagonistic to those of the remainder of the class." *In re United Energy Corp. Solar Modules Tax Shelter Investments Securities Litigation,* 122 F.R.D. 251, 257 (N.D. Cal. 1988). Both requirements are met here. As to the first requirement, Class counsel has an extensive track record litigating class actions. Haffner Decl., ¶¶5-7. With regard to Plaintiff, she will fairly and adequately protect the interests of class members, and her interests are not antagonistic to members of the proposed Class. Saechao Decl., ¶¶9-12. Plaintiff understands her role as class representative, and is willing to act as class representative. In sum, Plaintiff and her counsel are well-qualified to prosecute this case

and protect the interests of all class members. The adequacy requirement is met. Appointment of Haffner Law PC as class counsel is also proper under Rule 23(g): counsel identified and investigated the claims, has substantial experience in wage-and-hour and other class litigation, is knowledgeable of the applicable law, and has committed, and will continue to commit, the resources necessary to represent the Class. Fed. R. Civ. P. 23(g)(1)(A); Haffner Decl., ¶¶ 5-10.

**B. Plaintiff Satisfies The Requirements Of Rule 23(b).**

In addition to the prerequisites set forth in Rule 23(a), a class must also constitute one of the types of classes under Rule 23(b). Under Rule 23(b)(3), certification is appropriate if: (i) questions of law or fact common to the members of the class predominate over any questions affecting only individual members; and (ii) a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Local Joint Exec. Bd. Of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162-63 (9th Cir. 2001). As set forth below, this case meets the requirements for certification under Rule 23(b).

**1. Common Issues Predominate Across UPS' California Facilities.**

Certification of claims by employees working at multiple facilities operated by a single employer is appropriate when the claims are predicated on a common employer policy.

In *Abdullah*, the Ninth Circuit affirmed certification of a statewide meal-break class spanning hundreds of worksites: where "there are no relevant distinctions between the worksites," the "'nature of the work' inquiry would be a common one," focused on the legality of the employer's uniform staffing model, "rather than a site-by-site" inquiry. *Abdullah*, 731 F.3d at 964. On that record, the class claims "will prevail or fail in unison." *Id.* at 967. District courts have applied the same rule to certify security-screening classes across dozens of facilities. *Frlekin v. Apple Inc.*, 309 F.R.D. 518, 525 (N.D. Cal. 2015) [certifying class of more than 12,400 employees across all 52 of Apple's California retail stores subject to exit bag searches; Apple's "state-wide written policy . . . will serve as a common method of proof for all 52 California stores"]; *Cervantez v. Celestica Corp.*, 253 F.R.D. 562, 569-570 (C.D. Cal. 2008) [certifying class of approximately 3,965 distribution-facility workers for uncompensated time in security lines;

individual variation in wait times did not defeat predominance]. The Ninth Circuit also held that certification is appropriate where “the overwhelming evidence shows that the company consistently enforced its policy across all employees." *Miles v. Kirkland's Stores, Inc.*, 89 F.4th 1217, 1223-24 (9th Cir. 2024). *Miles* only declined to certify where the policy was "enforced . . . sporadically." *Id.* at 1224–25.

Here, UPS has the same mandatory screening process at all facilities that cannot be bypassed in either direction, the same badge infrastructure that pays only for time in the screening process, and the same statewide meal, rest, and timekeeping policies. Haffner Decl., Exh. 4 (Savage Depo.) 27:9–28:10; 38:25–39:3; 30:1–3; Haffner Decl., Exh. 14 (Felsing Depo.) 15:13–18; 18:5–21; 33:21–25. Defendant’s security screening policies are mandatory and consistently applied across facilities, raising predominantly common issues.

### 2. Common Issues Predominate As To Each Cause Of Action.

#### a. Common Issues Predominate As To Plaintiff’s Meal Break Claims.

Common issues predominate as to *both* of Plaintiff’s meal-break theories: (1) UPS’s security screening made an uninterrupted, off-premises meal period impossible on shifts with a recorded meal period of 30 minutes or less; and (2) UPS’s own records establish outright-missed meal periods on shifts exceeding five hours with no meal period recorded. Both theories rise from objective criteria in UPS’s uniform timekeeping records which is common to the Class.

##### i. It is impossible for class members to take meal breaks off premises without interruption.

Common issues predominate as to whether Defendant’s security process violated California meal break law by confining Class members to Defendant’s premises during their 30-minute meal break, unless they underwent a security check that interrupts it.

“To qualify as a lawful meal break under California law, an employee must be relieved of all duties for ***an uninterrupted 30 minutes***.” *Alberts v. Aurora Behavioral Health Care* 241 Cal.App.4th 388, 400 (2015). [emphasis added].

California law establishes that restraining an employee from leaving the premises for a meal break is a violation. In *Bono Enterprises v. Bradshaw* 32 Cal.App.4th 968 (1995), employees were required to "remain on the plant premises during their 30–minute lunch period unless they make prior arrangements to reenter the plant after leaving for lunch." *Id.* at 972. *Bono* held that "[w]hen an employer . . . restrains an employee from leaving the work place . . . and thus prevents the employee from using the time effectively for his or her own purposes, that employee remains subject to the employer's control . . . [and] that employee must be paid." *Id.* at 975. *Frlekin v. Apple Inc.* 8 Cal.5th 1038 (2020), cited *Bono* with approval, and held that "workers who were required to remain on the premises during their lunch break were entitled to compensation because they were subject to the employer's control." *Id.* at 1053.

Defendant's security process requires Plaintiff and class members to go back on duty to undergo the check, and interrupt their 30-minute meal break, if they want to leave the premises, and also when they return. "[I]t is clear that plaintiffs are subject to [employer]'s control while awaiting, and during, [employer]'s exit searches.'" *Id.* at 1056. It is impossible under Defendant's policies for Class members to leave Defendant's premises and have an uninterrupted 30-minute break.

Plaintiff's case illustrates the issue. There are 4 shifts are identified in UPS's records where Plaintiff received an unpaid 30-minute meal period. Haffner Decl., Exh. 12 [UPS 001251]. In each of those shifts, she was confined to the premises unless she interrupted her meal break by going through security. Plaintiff testified she liked to take her lunch in her car, and when she did she had to go through security. Haffner Decl., Exh. 16 (Saechao Depo.), 127:15–128:5, 129:5–18.

Notably, it is irrelevant whether Class members actually left the premises for their meal break. It is the confinement to the premises, unless they interrupt the meal break, that establishes a violation. *Frlekin*, 8 Cal.5th at 1053. This theory is established by objective, common proof: UPS's time records identify each Class member whose records reflect a meal period of 30 minutes or less — employees for whom leaving the premises necessarily meant an interrupted

break, because a 30-minute meal period cannot absorb two security screenings and remain intact.

The Ninth Circuit has explicitly endorsed class certification of Plaintiff's theory that a security check impedes an off premises meal break.

> "Plaintiffs' meal-break theory is that Walmart's standard practice—requiring employees who wanted to leave the building on their meal breaks to go through a security check *after* clocking out—impermissibly impeded or discouraged employees at the Chino facility from taking meal breaks. . . Here, all employees in the class were subject to the same security check requirements before leaving the building. Plaintiffs' theory of liability directly challenged that practice. Plaintiffs' 'theory of liability—that [the employer] has a uniform policy, and that that policy, measured against wage order requirements, allegedly violates the law—is by its nature a common question eminently suited for class treatment.'" *Hamilton v. Wal-Mart Stores, Inc.*, No. 19-56161, 2022 WL 2374445, at *3 (9th Cir. 2022) (not published, italics in original) (citing *Brinker*, 53 Cal.4th at 1033).

The Ninth Circuit has also affirmed Rule 23(b)(3) certification of a California meal-period class where the lawfulness of the employer's uniform meal-period policy was the predominant common question. *Abdullah*, 731 F.3d at 961–64; s*ee also McGhee v. Tesoro Ref. & Mktg. Co. LLC*, 2023 WL 1997729, *1 (N.D. Cal. 2023) (certifying class where "Defendant discouraged from taking off-premises meals breaks").

**ii. Meal break not provided for shifts exceeding 5 hours.**

Common issues also predominate as to Defendant's outright failure to provide meal periods, for shifts exceeding 5 hours.

An employer must provide a meal period of not less than 30 minutes for shifts exceeding five hours, commencing before the end of the fifth hour of work. Lab. Code §§ 512(a), 226.7; *Brinker*, 53 Cal.4th at 1041–42. Where the employer's time records show no meal period was recorded, a rebuttable presumption of violation arises. *Donohue v. AMN Services, LLC* 11 Cal.5th 58, 77 (2021).

This theory addresses Class members whose records reflect a workday exceeding five hours with no recorded meal period. This constitutes a missed meal period established by UPS's own records. Indeed, UPS's timekeeping records reflect eight workdays on which Plaintiff worked more than five hours with no recorded meal period: November 26 (5.77 hours),

November 27 (5.02 hours), November 30 (5.10 hours), December 6 (5.48 hours), December 7 (6.25 hours), December 12 (5.97 hours), December 13 (5.10 hours), and December 21 (5.33 hours), all in 2024. Haffner Decl., Exh. 1, pg. 6, Exh. 2.[1]

Because UPS's uniform timekeeping system captures the same records for every Class member [Haffner Decl., Exh. 9 (Cheung Depo.) 33:3–36:4; Exh. 14 (Felsing Depo.) 18:5–21; 33:21–25], whether those records reflect missed meal periods, and the *Donohue* presumption they trigger, is subject to predominantly common, records-based proof.

Common issues predominate regarding meal break violations.

**b. Common Issues Predominate As To Plaintiff's Rest Break Claim.**

Common evidence predominates as to whether UPS exerts control over Class members, and impedes their rest break, through the security screening process.

"During required rest periods, employers must relieve their employees of all duties and relinquish any control over how employees spend their break time." *Augustus v. ABM Security Services, Inc.* 2 Cal.5th 257, 260 (2016). In that regard, employees must be allowed off premises during rest breaks. *Id.* at 270 (employees during rest breaks should be free to go off premises to "take a brief walk—five minutes out, five minutes back").

Here, under Defendant's policy, with respect to security screening to leave the premises, rest periods follow the "same process as the meal periods." Haffner Decl., Exh. 3 (Cota Depo.), 55:15–17. That policy requires all employees, if they want to leave for a rest break, to empty their pockets, submit bags to search, and submit to metal detector or wanding, ***twice***, to exit and reenter. *Id.* at Exh. 6 [UPS001388]; Exh. 3 (Cota Depo.), 55:24–56:22.

Case law establishes that acts by the employer "***impeding or discouraging*** the taking of breaks" are rest break violations. *Godfrey v. Oakland Port Servs. Corp.*, 230 Cal. App. 4th 1267, 1287, n.22 (2014) (emphasis added). "An employer cannot contravene an official meal or rest

[1] Indeed, on the December 7 shift of 6.25 hours, no meal-period waiver was even available. Lab. Code § 512(a) [waiver permitted only where total work is no more than six hours]. To the extent UPS contends meal periods were waived by mutual consent on shifts of six hours or less, waiver is an affirmative defense resolvable by common proof from UPS's uniform policies and records.

break policy by imposing an informal practice that ***impedes or discourages*** its employees from taking compliant breaks." *Campbell v. Vitran Express Inc*, 2015 WL 7176110, *4 (C.D. Cal. 2015) (emphasis added).

In *Stewart v. Quest Diagnostics Clinical Lab'ys, Inc.*, 2022 WL 5236821, (S.D. Cal. 2022), the employee claimed the employer's "'strict productivity and urgency goals' impede[d] employees' ability to take rest breaks." *Id*. at *15. Noting that "[o]ther courts have certified classes where the plaintiff argued the employer had a policy or practice which made it difficult for employees to take their allotted rest periods," the Court granted certification of the rest break class. *Id*. *See also Villalpando v. Exel Direct Inc.*, 2016 WL 1598663, *15 (N.D.Cal. 2016) (certifying a claim based "common policies that make it difficult or impossible for class members to take breaks") (italics added).

Importantly, it is Defendant's screening policy, not the size of its facilities, that confines Class members during rest breaks. During every rest break, UPS relinquishes no control: employees may not exit the premises without submitting to a compelled search, emptying pockets, tendering bags, and clearing a metal detector or wand, and then repeating that process to return. Haffner Decl., Exh. 6 [UPS001388]; Exh. 4 (Savage Depo.), 27:9–28:10 [no way in or out except through screening]; *id.* 27:13–21 [no employee may opt out, even carrying nothing]. During rest periods, an employer must "relinquish any control over how employees spend their break time" *Augustus*, 2 Cal.5th at 260, and an employee who cannot step outside the employer's gates without twice submitting to search remains under the employer's control throughout the break.

#### c. Common Issues Predominate As To Plaintiff's Minimum Wage Claim.

Common issues predominate as to Plaintiff's minimum wage claims based on Defendant's policy of not paying for Class members' time between the security screening and clock in/out locations, at the beginning and end of shifts, and between clock in machine to scheduled start location.

**i. Unpaid Off-The-Clock Time Between Security Screening And Clock In/Out Location.**

Defendant admits its common statewide policy is not to pay for Class members' time while on Defendant's premises walking to and from security checks to clock in/out locations. Haffner Decl., Exh. 8 (Terpening Depo.) 41:12–17.

"Hours worked" means the time during which an employee is subject to the employer's control. Applicable IWC Wage Order 9, § 2 [definition of "hours worked"]; see *Morillion v. Royal Packing Co.* 22 Cal.4th 575, 586–87 (2000). The controlling question — whether Class members are "subject to" UPS's control while walking between UPS's mandatory security screening and the time clock, both when entering at the start of the shift and when leaving at its end — is common to the Class. It turns on UPS's uniform screening policy and not on any individual's circumstances.

Plaintiff's theory is supported by three California Supreme Court decisions which have progressively established that an employee confined to the employer's premises and prevented from using the time for their own purposes, is subject to the employer's control and must be compensated. The Court first recognized the principle in *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575 (2000), holding that time agricultural workers spent riding employer-mandated buses to the fields was compensable, because the workers traveled on the employer's terms and could not "use the time effectively for their own purposes." *Id.* at 586–87 Two decades later, in *Frlekin v. Apple Inc.*, 8 Cal. 5th 1038 (2020), the Court applied that principle to on-premises security screening, holding that time employees spent awaiting and undergoing mandatory exit bag-searches was compensable because they were confined to the premises pending an employer-controlled process enforced under threat of discipline. And most recently, in *Huerta v. CSI Electrical Contractors*, 15 Cal. 5th 908 (2024), the Court extended the analysis to an on-premises exit *security procedure*, holding that "an employee's time spent on an employer's premises awaiting . . . an employer-mandated exit procedure . . . is compensable as 'hours worked.'" *Id.* at 915.

These cases establish that confinement pending a mandatory security screening is a hallmark of compensable control. The *Huerta* Court identified the employer's "confinement of employees to the premises while they waited to undergo an exit search" as evidence of control, *id.* at 919 (discussing *Frlekin*), and held the procedure compensable because, "like the employees in [*Frlekin*], *Huerta* remained confined to the employer's premises until he completed the exit procedure; the procedure was thus an 'onsite employer-controlled activit[y].'" *Id.* at 920.[2]

UPS's entry and exit screenings are likewise "onsite employer-controlled activities." At the start of the shift, Class members pass through UPS's mandatory entry screening and then walk to the time clock before they may clock in; at the end, they clock out and then walk to and through the mandatory exit screening before they may leave. During both intervals Class members remain on UPS's premises, confined and subject to UPS's control. More importantly, whether Class members are subject to UPS control, and owed compensation, for this period is a common question for the Class.

In *Lao v. H&M Hennes & Mauritz, L.P.*, 2018 WL 3753708 (N.D. Cal. 2018), the Court addressed a case where "Security checks at the end of a shift are conducted after an employee clocks out. Plaintiff clocked out at the back of the store where the time clock is located, ***and then walked to the front of the store*** and waited for a manager to conduct a security check." *Id*. at *2 (emphasis added). Plaintiff made a claim for payment of "the entire security check process." *Id*. The Court granted certification of the claim. *Id*. at *11.

Plaintiff testified that the walk to the clock in/out area, before or after the security screening, took three to four minutes each way. Haffner Decl., Exh. 16 (Saechao Depo.), 137:17–25. This time is compensable if she was subject to Defendant's control. Notably, there is no exception in California for failure to pay wages for "de minimis" time. *Troester v. Starbucks*

[2] *Huerta*'s separate holding that drive time was not compensable is inapplicable this case. That holding rested on facts absent here: the employee drove his *own personal vehicle*, subject only to "ordinary workplace rules" governing safe travel, and underwent no security procedure during the drive. *Huerta*, 15 Cal. 5th at 928–29. The Court illustrated the limits of its holding — a maintenance worker barred from skateboarding through the lobby, or a store clerk barred from chewing gum while walking through the store before or after her shift. *Id.* at 929. Those employees remain free to come and go; they are merely subject to conduct rules. Class members here are not free to leave at all until they clear a compelled security screening.

*Corp.* 5 Cal.5th 829, 847 (2018) ("[a]n employer that requires its employees to work minutes off the clock on a regular basis or as a regular feature of the job may not evade the obligation to compensate the employee for that time by invoking the de minimis doctrine").

**ii. Unpaid On-The-Clock Time Between Clock In Location And Scheduled Work Area.**

Common issues also predominate as to UPS's policy of paying Class members from their scheduled start time, rather than their actual clock-in time. This policy is admitted by UPS. Haffner Decl., Exh. 9 (Cheung Depo.) 35:13–25; Exh. 8 (Terpening Depo.) 28:12–25. Defendant operates the same uniform GTS timekeeping system for every Class member which reflects this unpaid on-the-clock time. *Id*. at Exh. 9 (Cheung Depo.) 33:3–34:14. Whether the disregarded time is "hours worked" is a common question for the Class. Indeed, for all Class members, they are required to clock in after clearing security, and are expected to be at their workstations by the scheduled start time. *Id*. at Exh. 3 (Cota Depo.) 38:22–25; Exh. 8 (Terpening Depo.) 26:8–27:4. It is a predominantly common question whether class members are subject to UPS's control and suffered or permitted to work during this unpaid on-the-clock time. IWC Wage Order 9, § 2; *Morillion*, 22 Cal.4th at 586–87. There is no de minimis exception for these regularly recurring minutes. *Troester*, 5 Cal.5th at 847.

*Camp v. Home Depot U.S.A., Inc.* 84 Cal.App.5th 638 (2022) is on point. There, the employer's electronic timekeeping system captured work time to the minute, but employees were paid for less time than the system recorded. The court held: "if an employer, as in this case, can capture and has captured the exact amount of time an employee has worked during a shift, the employer must pay the employee for 'all the time' worked." *Id*. at p. 660, review granted Feb. 1, 2023, S277518 [opinion citable for its persuasive value, Cal. Rules of Court, rule 8.1115(e)(3)]. UPS's policy is starker than the rounding in *Camp* because it shaves time in only one direction — in UPS's favor. Courts certify classes on records-based theories like this one. *Sali v. Corona Regional Med. Ctr.*, 909 F.3d 996, 1008-1011 (9th Cir. 2018) [reversing denial of certification of rounding claim proven by employer's timekeeping records]; *Walter v. Leprino Foods Co.*, 670

F.Supp.3d 1035, 1051-1055 (E.D. Cal. 2023) [certifying pre-shift rounding class]; *Hoffman v. Blattner Energy, Inc.*, 315 F.R.D. 324, 343 (C.D. Cal. 2016) [certifying pre- and post-shift off-the-clock subclasses]. Liability and damages flow directly from UPS's own GTS fields, which capture the scheduled start time and actual clock-in time for every Class member on every shift.

Common issues predominate as to Plaintiff's minimum wage claim.

**iii. Common Issues Predominate As To Plaintiff's Overtime Wage Claim.**

Plaintiff's overtime claim presents the same common question, and the same proof, as her minimum-wage claim. UPS does not compensate for certain time, although they are "hours worked." On those occasions when that uncompensated time is added to the hours UPS did record, and class members exceed the daily and weekly overtime thresholds, Class members are entitled to overtime pay. Common issues predominate as to Plaintiff's overtime claim. See *Ornelas v. Tapestry, Inc.*, 2021 WL 3471173, *7 (N.D. Cal. 2021) (addressing minimum wage and overtime claim in connection with exit checks, and granting certification, finding "that questions of law or fact common to class members predominate over any questions affecting only individual members").

To the extent UPS contends that a collective bargaining agreement exemption — such as Labor Code section 514 — applies to the overtime claim, that contention presents a class-wide issue. Whether the operative CBAs satisfy the statutory exemption requirements is a common question answerable from the CBAs and UPS's own payroll records, and it therefore supports certification.

**iv. Common Issues Predominate As To Plaintiff's Derivative Claims For Inaccurate Wage Statements And Failure To Pay Wages At Separation.**

Plaintiff's derivative claims for inaccurate wage statements and failure to pay all wages at separation rise or fall with her underlying break and wage claims.

Defendant's failure to pay all wages for all time, and failure to pay for breaks that were not compliant, gives rise to derivative claims for inaccurate wage statements under Labor Code §

226, and failure to pay all wages upon separation under Labor Code §203. *See e.g.*, *Wilson v. TE Connectivity Networks, Inc.*, 2017 WL 1758048, *13 (N.D.Cal. 2017) ("[t]he Parties agree that the certification of Plaintiff's derivative claims—for violations of Labor Code Sections 203 and 226(a) . . . —rises or falls with certification of his underlying wage and hour claims"); and *Andrade v. Arby's Restaurant Group, Inc.*, 225 F.Supp.3d 1115, 1133 (N.D.Cal. 2016) ("because Andrade sufficiently alleged she was not paid [wages] . . . during her employment . . . she is owed waiting time penalties under §203(a)"). Because these claims turn on the same common proof as the underlying claims, they also raise predominantly common issues, and are equally well-suited to class treatment.

**v. Common Issues Predominate As To Plaintiff's UCL Claims.**

Common issues predominate as to Plaintiff's claims under California's unfair competition law, Business & Professions Code §17200 (the "UCL").

Each of the wage violations claims alleged gives rise to liability under the unlawful prong of the UCL. *Community Assisting Recovery, Inc. v. Aegis Security Ins. Co.* 92 Cal.App.4th 886, 891 (2001) ("an 'unlawful' business practice actionable under the UCL is one that violates an existing law"). Likewise, "a UCL claim may be predicated on a practice" that violates meal and rest break law. *Safeway, Inc. v. Superior Court*, 238 Cal.App.4th 1138, 1155 (2015). Violation of the IWC Wage Order also supports derivative liability under the UCL's unlawful prong. Case law has recognized that "certification of Plaintiff's derivative claims . . . [for] Business & Professions Code Section 17200 - rises or falls with certification of his underlying wage and hour claims." *Wilson*, 2017 WL 1758048 at *13. Common issues predominate as to Plaintiff's derivative UCL claim under the "unlawful" prong.

Finally, Plaintiff's claim under the unfair prong of the UCL should also be certified because it is based on common policies, and thus common issues predominate. *Safeway,* 238 Cal.App.4th at 1154.

///

**2. Class Treatment Is Manageable And Superior.**

This case is manageable as a class action. Liability under Plaintiff's theory is based on predominantly common proof, specifically, Defendant's commonly applied policies. Plaintiff will present evidence regarding Defendant's common policies, facility documentation, records, and discovery response, along with testimony from plaintiff and select class members, and testimony of Defendant's corporate witnesses. Indeed, UPS's own policy documents and timekeeping records supply common proof for every class member. Where a uniform policy is measured against the wage laws, liability may be established with representative proof common to the class. *Tyson Foods, Inc. v. Bouaphakeo* 577 U.S. 442, 457-458 (2016).

Damages can likewise be calculated on a class-wide basis using a model tied to Plaintiff's theory of liability. With respect to meal breaks, under the confinement theory, each shift on which Defendant recorded a 30-minute unpaid meal break, there was a violation, as it was impossible to leave the premises for that break without interrupting it. As to the missed-meal break theory, shifts exceeding five hours without a meal break recorded, each of those are also a violation. These meal break violations are based in UPS's own records, which raise a rebuttable presumption of violation as to facially noncompliant meal periods reflected in them. *Donohue,* 11 Cal.5th at 77. With respect to rest periods, Defendant's security check exerted control and impeded a duty free rest break for each qualifying shift. Thus, damages for meal and rest can be calculated by awarding one additional hour of pay at each Class member's regular rate of compensation for each workday on which a violation occurred. Lab. Code, § 226.7(c).

As to the uncompensated time between screening and clock in/out location, it can be calculated based on a formula or estimate of the amount of time it takes to walk between security screening and clock in/out locations. That formula is anchored in UPS's own data: SCAR records every badge scan at all 39 facilities, and UPS's timekeeping system separately records every clock-in and clock-out. Haffner Decl., Exh. 4 (Savage Depo.) 30:1–3; 33:1–34:2; Exh. 9 (Cheung Depo.) 33:3–36:4, 56:1–9; Haffner Decl., Exh. 1. This permits a records-based estimate of the time required to walk between the security checkpoint and the time clock. Plaintiff testified that

her estimate of 3-4 minutes of walking time each way between security screening and clock in/out. Haffner Decl., Exh. 16 (Saechao Depo.), 138:1–4. Indeed, Plaintiff's damages expert, Justin Regus, attests that damages can be calculated based on Defendant's records, and class wide formulas. Declaration of Justin Regus, ¶¶6-17.[3] Calculating under UPS's schedule-based pay policy, i.e., not paying for the on-the-clock time from clock-in until reaching start area, is also based on Defendant's records. For each shift, the unpaid increment is the difference between the recorded actual clock-in time and the scheduled start time from which pay began — both captured in UPS's GTS records for every Class member. Haffner Decl., Exh. 1, pg. 3.

Moreover, UPS was obligated to record and pay for all hours worked, but its own records show it recorded zero walk time. Haffner Decl., Exh. 1, pgs. 6, 14, column 1. Where the employer fails to keep records of compensable time, employees may prove hours worked by "just and reasonable inference," and the burden shifts to the employer to rebut that inference. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946).

Finally, even if damages required individualized proof, and they do not in this case, individual damages issues are not a basis to deny class certification. *Leyva v. Medline Indus., Inc.*, 716 F.3d 510, 513–14 (9th Cir. 2013).

Class treatment is a superior mechanism for this case. Class members' individual claims are relatively modest, a few minutes of uncompensated time and missed-break premiums. Thus, few could or would pursue them individually, and the class device is the appropriate way to vindicate their rights. Concentrating the claims in one forum also avoids inconsistent

---

[3]Plaintiff notes that she diligently sought UPS's classwide security-scan ("SCAR") and timekeeping/payroll data in discovery, but UPS refused to produce complete class data, offering only sampling. Haffner Decl., ¶¶ 26-28, Exhs. 17-18. However, class data goes primarily to damages, and is not necessary for class certification, particularly Defendant's common policies and recordkeeping, and Plaintiff's identified damages methodology. See Lytle v. Nutramax Labs., Inc., 114 F.4th 1011, 1025 (9th Cir. 2024) [class certification appropriate "upon a showing that damages could be calculated on a classwide basis, even where such calculations have not yet been performed"] [italics in original]; Owino v. CoreCivic, Inc., 60 F.4th 437, 447 (9th Cir. 2023) [no fully formed damages model required where discovery incomplete and records remained in defendant's control]; and Moore v. Ulta Salon, Cosmetics & Fragrance, Inc., 311 F.R.D. 590, 621-22 (C.D. Cal. 2015) [in security-inspection case, plaintiff's analyzing timekeeping records not necessary for certification].

adjudications of UPS's uniform policy and conserves judicial resources. See *Daar v. Yellow Cab Co*. 67 Cal.2d 695, 714-15 (1967).

Class treatment of this case would be superior and manageable.

**IV. Conclusion.**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this motion, and certify the Class under Federal Rule of Civil Procedure 23(a) and 23(b)(3), or, in the alternative, certify particular claims or issues under Rule 23(c)(4).

DATED: July 20, 2026

HAFFNER LAW PC

By: */s/ Trevor Weinberg*
Joshua H. Haffner
Trevor Weinberg
Samantha Salas
Attorneys for Plaintiff and all others similarly situated